JOURNAL ENTRY AND OPINION
Defendant-appellant, Brett Wuensch, appeals the judgment of the Berea Municipal Court finding him guilty after a bench trial of criminal trespass, in violation of City of Strongsville Cod. Ord. 642.12, and defrauding creditors, in violation of City of Strongsville Cod. Ord. 2913.45(A)(1).
Appellant was arrested and charged on May 31, 1998. He pled not guilty to the charges and subsequently waived his right to a jury trial. The trial court held a bench trial on December 9, 1999.
Three witnesses testified for the prosecution. Adelle Mihu testified that she had operated Evergreen Stables, a boarding stable in Strongsville, for over forty years. According to Mihu, in October 1995, appellant, Cynthia Catteral, and their two children, came to Evergreen Stables and boarded a horse with her. The monthly boarding fee was $200. Mihu testified that it was mainly appellant who paid the monthly boarding fee, although sometimes an unnamed woman (who appellant later identified as his wife Julie) paid the fee. According to Mihu, in September 1996, appellant did some bulldozing and installed drainpipe on her property for which she credited the horse boarding account $1,100. In June 1997, appellant did more work on Mihu's property and Mihu credited the account $200.
According to Mihu, prior to May 1998, she had sent appellant many letters, including a certified letter for which Mihu had received the return receipt indicating that the letter had been delivered, advising him that the account was five months in arrears and $1,200 was due for board.
Mihu testified that on May 31, 1998, she observed Catteral enter the barn where the horse was boarded and walk the horse out of the barn. Mihu also observed a man with a horse trailer with Catteral.
Mihu confronted Catteral and asked her what she was doing. Catteral informed Mihu that she was taking the horse. When Mihu asked Catteral if she had a check to pay for the account, Catteral informed Mihu that appellant had advised her that everything was OK and she could take the horse. Mihu told Catteral she could not take the horse because there was money owing on the account.[1] Mihu then took the horse from Catteral and put it in her private barn.
Mihu testified that Catteral then called appellant from a cellular phone while she went into her house and called the police. Mihu subsequently observed appellant walking the horse out of her private barn. She testified that she told appellant that he could not take the horse because he owed her money, but appellant informed her, It's my horse, and kept on walking. According to Mihu, appellant walked the horse off her property as Catteral walked next to him.
Mihu testified that her private barn is located behind her house at a considerable distance from the barn used by tenants to board their horses. According to Mihu, although tenants who boarded horses at Evergreen Stables were allowed to come on the property because they boarded horses there, they were never allowed to go into her private barn. She testified further that the work appellant had done on her property never necessitated that he go into her private barn.
Karen Lawrence testified that Mihu called her in May 1998 and asked her to come to the stables because appellant and Catteral had taken a horse. According to Lawrence, when she got to Mihu's house, Mihu told her that appellant and Catteral had just left, so she and Mihu got in her van and drove down the road, hoping to find them. They found Catteral, alone, riding the horse. Lawrence and Mihu walked up to Catteral, and Lawrence asked her what she was doing. According to Lawrence, Catteral did not say anything but took off running on the horse.
Cynthia Catteral testified that she and appellant had lived together for eight years and had two children. Catteral testified that her relationship with appellant ended in 1996.
According to Catteral, she bought the horse in 1993, although she never received a document which stated that she was the owner. Catteral testified that she gave the horse to appellant in 1996 when they broke up. According to Catteral, there was no court proceeding to divide their property, but appellant wanted the horse and paid for it so she wrote a note on a picture of the horse indicating that it now belonged to appellant. Catteral testified that she gave the picture with the note to appellant.
Catteral testified that appellant asked her to get the horse from Evergreen Stables because appellant knew that she could get it in a trailer even though it was uncontrollable. According to Catteral, she did not know there was any money owing on the account when she went to pick up the horse. Catteral testified that appellant made the arrangements for someone with a horse trailer to meet her at the stables.
Catteral testified that as she was taking the horse out of the barn, Mihu confronted her and asked her what she was doing. When Catteral informed Mihu that appellant had asked her to get the horse, Mihu became upset and told her that appellant owed her money for the horse. Catteral testified that Mihu then took the horse to her private barn. She called appellant, who arrived ten minutes later. Catteral testified that she told appellant that she would not take the horse off the property because Mihu had told her that appellant owed money. According to Catteral, after she told appellant that the horse was in Mihu's private barn, appellant went into the barn, got the horse and began walking it off the property. Mihu then came out of her house and confronted appellant. Catteral testified that Mihu tried to get the horse from appellant but appellant pushed her aside and took the horse to the street. At the street, Catteral got on the horse and rode it to Berea Stables.
The trial court denied appellant's Rule 29 motion for dismissal and appellant testified on his own behalf. Appellant testified that the horse belonged to Catteral at the time of the incident with Mihu. According to appellant, prior to that time, Catteral had not given him the horse or anything, including a photograph of the horse, to indicate that he was the owner. On cross-examination, appellant testified that he took ownership of the horse after the May 1998 incident when he and Catteral brought the horse to Berea Stables and Catteral informed a woman at the stables that the horse was appellant's and instructed the woman to deal with him. Appellant testified that there was no bill of sale, however, indicating that he was the owner. Appellant testified that he subsequently sold the horse but did not give any of the money from the sale to Catteral.
Appellant testified that he never signed a document agreeing to pay the horse boarding fee to Mihu and that he was not obligated to pay the fee, although he admitted that he did some work for Mihu for which she credited the account.
Appellant testified that the jobs he did for Mihu gave him access to all of her property and that he had been in her private barn before the incident in May 1998. Appellant also testified that Mihu never restricted him from any part of the property.
According to appellant, one afternoon in May 1998, while he was at home, he received a telephone call from Catteral, asking him to come to the stables and help her move the horse. Appellant testified that when he arrived at the stables, Catteral asked him if he could get the horse for her out of Mihu's private barn. According to appellant, as he began walking out of the barn, Mihu came out of her house and asked him, What are you doing? What's going on? Appellant admitted that by that point, I get the gist there's rent, there's issues of that. — According to appellant, he then handed the horse over, got in his truck and left.
Upon questioning by the trial court, appellant admitted that there was a judgment in small claims court against him in the amount of $1,200 on a restitution claim by Mihu.
The trial court found appellant guilty on both counts. It sentenced him to twenty days in jail on the charge of criminal trespassing and twenty days in jail on the charge of defrauding creditors, with the sentences to run concurrently. The trial court ordered that if the judgment against appellant was paid by January 9, 2000, however, the jail sentence would be reduced to three days. The trial court also ordered appellant to pay a fine of $250 and court costs on count one and a fine of $100 and court costs on count two.
Appellant timely appealed, raising four assignments of error for our review. Appellant's first and second assignments of error state:
 I. THERE WAS INSUFFICIENT EVIDENCE WITH WHICH TO SUPPORT THE TRIAL COURT'S FINDING OF GUILTY WITH RESPECT TO THE CHARGE OF TRESPASS.
 II. THERE WAS INSUFFICIENT EVIDENCE WITH WHICH TO SUPPORT THE TRIAL COURT'S FINDING OF GUILTY WITH RESPECT TO THE CHARGE OF DEFRAUDING CREDITORS.
In his first and second assignments of error, appellant challenges the sufficiency of the evidence to support his convictions.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Id. at 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In essence, therefore, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra, at 386.
Strongsville Cod. Ord. 642.12 defines the offense of criminal trespass:
 (a) No person without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another;
 (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes or hours, when the offender knows he or she is in violation of any such restrictions or is reckless in that regard;
 (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
 (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant or the agent or servant of either.
* * *
 (d) As used in this section, land or premises includes any land, building, structure or place belonging to, controlled by, or in custody of, another, and any separate enclosure or room, or portion thereof.
Appellant contends that there was insufficient evidence to support his conviction for criminal trespass because Mihu testified that appellant had permission to come on her property because he boarded a horse there. We agree with appellant's characterization of this portion of Mihu's testimony. Mihu also testified, however, that none of the boarders, including appellant, had permission to go into her private barn. Therefore, by entering Mihu's private barn, appellant was guilty of criminal trespass.
Appellant asserts, however, that there was insufficient evidence to conclude that he entered the private barn because Mihu testified that she did not see him enter the barn — she only saw him leave the barn with the horse. This argument is specious. It is a safe assumption that if Mihu saw appellant leaving the barn, he had to have entered it. Moreover, Catteral testified that after she told appellant that the horse was in Mihu's private barn, appellant entered the barn, removed the horse and began walking the horse off Mihu's property.
On the basis of Mihu's and Catteral's testimony, a reasonable trier of fact could have concluded that appellant knowingly entered Mihu's private barn, without permission to do so, in violation of Strongsville Cod. Ord. 642.12(a)(1). In short, there was sufficient evidence to find appellant guilty of criminal trespass.
Strongsville Cod. Ord. 2913.45(A)(1) defines the offense of defrauding creditors:
 (A) No person, with purpose to defraud one of more of the person's creditors, shall do any of the following:
 (1) Remove, conceal, destroy, encumber, convey, or otherwise deal with any of the person's property.
Appellant contends that the evidence adduced at trial failed to establish that Mihu was a creditor of his, an element of the offense of defrauding creditors. We disagree.
Catteral testified that she gave the horse to appellant in 1996, well before the incident in May 1998. Moreover, appellant admitted that he worked at Mihu's property in 1996 and 1997 and that Mihu credited the horse boarding account in lieu of paying him for his services. Mihu testified it was mainly appellant who paid the monthly boarding fee, and sometimes an unidentified woman paid the fee. In his testimony, appellant identified the woman as his wife, Julie. Mihu also testified that she sent appellant numerous letters informing him that the horse boarding account was overdue. This evidence, if believed, was clearly sufficient to establish that Mihu was appellant's creditor with respect to the horse boarding account.
Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable fact finder could have found beyond a reasonable doubt that appellant removed the horse boarded at Mihu's stables, without paying the balance due for its boarding, with an intent to defraud her.
Appellant's first and second assignments of error are overruled.
Appellant's third and fourth assignments of error state:
 III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON THE CHARGE OF TRESPASS.
 IV. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON THE CHARGE OF DEFRAUDING CREDITORS.
In his third and fourth assignments of error, appellant asserts that his convictions were against the manifest weight of the evidence.
When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
After reviewing the entire record, weighing the evidence and considering the credibility of witnesses, we are not persuaded that the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed. Rather, the record demonstrates that there is substantial evidence from which the trial court could have concluded, beyond a reasonable doubt, that appellant entered Mihu's private barn without permission to do so, in violation of Strongsville Cod. Ord. 642.12, and, with knowledge that his horse boarding account was in arrears, took the horse without paying the balance due on the account with an intent to defraud Mihu, in violation of Strongsville Cod. Ord. 2913.45(A)(1).
Appellant's third and fourth assignments of error are therefore overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________ TIMOTHY E. McMONAGLE, P.J.:
[1] R.C. 1311.48 provides that any person who feeds or boards an animal under contract with the owner shall have a lien on such animal to secure payment for food and board furnished.